**Gary BALLARD and Nancy Ballard, Plaintiffs,**

v.

**EQUIFAX CHECK SERVICES, INC., Defendant.**

**No. CIV. S–96–1532 FCD.**

United States District Court,
E.D. California.

Feb. 22, 1999.

Paul Arons, Law Offices of Paul Arons, Redding, CA, for plaintiffs.

Audrey A. Millemann, Weintraub, Genshlea and Sproul, Sacramento, CA, David L Hartsell, Kilpatrick & Stockton, L.L.P., Atlanta, GA, for defendant.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

Plaintiffs Gary Ballard and Nancy Ballard move this court to reconsider the September 9, 1997 order denying class certification. E.D. Local Rule 78–230(k). Plaintiffs base their motion on an alleged change in the facts and applicable law and on an alleged injustice which will result if the class is not certified. For the reasons set forth below, the order denying class certification is amended, and class certification is granted in accordance with this order.

## FACTUAL BACKGROUND

Defendant Equifax Check Services, Inc. ("ECS") is in the check authorization and warranty business. ECS enters into subscriber agreements with retail merchants who accept checks from their customers. Under the terms of the subscriber agreement, when a customer presents a check to the merchant, the merchant contacts ECS for authorization. ECS then consults its computer files to see if it has any pertinent information on the check writer and advises the merchant to either accept or decline the check. When a check authorized by ECS is dishonored, ECS purchases the check for full value, up to a certain dollar amount, and initiates collection efforts on its own behalf. Any sums recovered are payable to ECS.

ECS's collection efforts include a series of standardized collection letters.[1] In addition to the amount of any unpaid check, ECS demands payment of a $20 service charge. ECS states in some of its letters that the service charge is authorized under California law.

During the relevant time period (August 26, 1992 to December 31, 1996),[2] ECS sought to collect a $20 service charge from approximately 1.4 million California residents. Approximately half of those residents paid the charge. Plaintiffs contend that ECS's practice of sending letters demanding a $20 service charge and representing that the charge was authorized under California law violated the Fair Debt Collection Practices Act ("FDCPA") and the California Unfair Business Practices Act ("CUBPA"). Accordingly, plaintiffs seek to certify a class of California consumers who were sent, or will be sent during the pendency of this action, a letter by defendant ECS, demanding payment to ECS of a service charge for collecting a dishonored check written between August 26, 1992 and December 31, 1996.

## ORDER DENYING CLASS CERTIFICATION

Plaintiffs noticed their motion for class certification on February 24, 1997. Judge Garland E. Burrell denied plaintiffs' motion on September 9, 1997. He held that certification was inappropriate under Rule 23(b)(2) because claims for monetary relief predominated over claims for injunctive and declaratory relief. He likewise held that certification was inappropriate under Rule 23(b)(3) because the following individual issues predominated over issues common to the class: (1) whether each check writer "expressly authorized" the service charge; (2) whether each service charge was justified as "incidental damages" under the Uniform Commercial

---

1. Gary Ballard received six such letters over a twelve week period.

2. The action was filed on August 26, 1996. The statute of limitations under the FDCPA is one year. 15 U.S.C. § 1692e(f)(2). The statute of limitations under the CUBPA is four years. Cal. Bus. & Prof.Code § 17208. As of January 1, 1997, service charges of $25.00 to $35.00 for dishonored checks are expressly permitted by statute. See Cal. Civ.Code § 1719(a)(1). Accordingly, the relevant time period is from August 26, 1992 (four years prior to the filing of the action) to December 31, 1996 (the last day services charges were not expressly authorized by statute).

Code; and (3) whether each transaction was a consumer transaction.

Nearly one year later, on August 17, 1998, this court [3] granted summary adjudication as to the issues of liability and declaratory relief in favor of plaintiff Gary Ballard. More specifically, the court declared that:

> (1) the $20.00 service charge demanded by ECS from Gary Ballard was neither expressly authorized by the agreement creating the debt or permitted by law in violation of 15 U.S.C. § 1692f(1); (2) ECS's representation that the $20.00 service charge was authorized under California law falsely represented the character and legal status of the debt and was deceptive in violation of 1692e(2)(A),(10); and (3) the aforementioned violations constitute "unfair competition" in violation of Cal. Bus. & Prof.Code § 17200.

With respect to liability, the court found ECS liable to Gary Ballard under the FDCPA, 15 U.S.C. §§ 1692f(1) and 1692e(2)(A),(10), and the CUBPA, Cal. Bus. & Prof.Code § 17200, for demanding a $20.00 service charge from him and representing to him that such a service charge was authorized under California law.[4]

Plaintiffs now request this court reconsider Judge Burrell's previous order denying class certification on the grounds that: (1) this court's August 17, 1998 order granting summary adjudication in favor of plaintiff Gary Ballard is new and controlling authority justifying class certification; (2) there is new evidence which establishes that ECS's records differentiate between consumer transactions and business transactions, so that class membership can be ascertained from those records; and (3) denial of class certification will result in an injustice in that ECS will retain millions of dollars in illegally collected service charges.[5]

**3.** This case was reassigned to Judge Frank C. Damrell, Jr. on January 26, 1998.

**4.** The court denied plaintiffs' motion for summary judgment as to plaintiff Nancy Ballard.

**5.** Plaintiffs do not request reconsideration of that portion of the court's order denying class certification of a class of California consumers from

## STANDARDS

### 1. Amendment Of Class Certification Order

■ A class certification order "may be altered or amended before the decision on the merits." Fed.R.Civ.P. 23(c)(1). "[B]efore entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative." *Officers For Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir.1982), *cert. denied*, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983). In *Officers For Justice*, the Ninth Circuit opined that "[p]erhaps the main reason for the tentative nature of class status determinations is that they are closely tied to the factual and legal issues of the case," which naturally evolve as the case progresses. 688 F.2d at 633.

■ Plaintiffs motion for class certification was filed nearly two years ago, and the court's order denying the motion was entered nearly one and one-half years ago. Since that time, the body of law pertaining to debt collection in general as well as the law and facts in this case have evolved. It is this evolution which warrants the amendment of the class certification order in this case. *See Abron v. Armco Steel Inc.*, 22 Empl. Prac. Dec. P 30588, 1979 WL 78 *1 (C.D.Cal.1979) (holding order denying class certification may be amended "if changed circumstances so warrant").[6]

### 2. Class Certification Under Rule 23(b)(2) or 23(b)(3)

There are four threshold requirements applicable to all class actions: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact common to the class; (3) the claims and defenses of the representative party are typi-

whom ECS verbally demanded payment of a service charge.

**6.** Because the court has the power to alter or amend the previous class certification order under Rule 23(c)(1), the court need not consider whether "reconsideration" is also warranted under Fed.R.Civ.P. 60(b) or E.D. Local Rule 78-230(k).

cal of the claims and defenses of the class; and (4) the representative party will fairly and adequately represent the interests of the class. Fed.R.Civ.P. 23(a).

An action may be maintained as a class action where the above prerequisites are met and one of the conditions enumerated in Rule 23(b) is satisfied. As set forth below, plaintiffs move for certification under Rule 23(b)(2), or alternatively, under Rules 23(b)(2) and 23(b)(3). Certification under Rule 23(b)(2) is proper where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2). Certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

■ The burden is on the party seeking to maintain the action as a class action to establish a prima facie showing of each of the 23(a) prerequisites and the appropriate 23(b) ground for a class action. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993), *cert. denied*, 519 U.S. 932, 117 S.Ct. 305, 136 L.Ed.2d 222 (1996); *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985). District courts have broad discretion in ruling on motions for class certification because "the district court is in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir.1977).

## MOTION FOR CLASS CERTIFICATION

Plaintiffs in this action seek certification of all issues (including liability, injunctive and declaratory relief, restitution and actual and statutory damages) under Rule 23(b)(2). Alternatively, plaintiffs seek certification of issues of liability, declaratory relief and statutory damages under the FDCPA and injunctive relief and restitution under the CUBPA under Rule 23(b)(2) and certification of actual damages under the FDCPA under Rule 23(b)(3).

## A. The Class Definition

Plaintiffs seek certification of the following class:

> All California consumers on whose claims the statute of limitations has not run who were sent, or will be sent during the pendency of this action, a letter by defendant ECS, demanding payment to ECS of a service charge for collecting a dishonored check written prior to January 1, 1997.

Plaintiffs request the court appoint Gary Ballard as the named plaintiff.

## B. RULE 23(a) [7]

### 1. Numerosity

■ The class must be so numerous that joinder of all members individually is "impracticable." Fed.R.Civ.P. 23(a)(1). No exact number cut-off can be stated. Rather, the specific facts of each case must be examined. *General Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). In its opposition to plaintiffs' motion for class certification, ECS admitted that during the four year period preceding the filing of this action, it sought to collect a $20 service charge from approximately 1.4 million California residents. Accordingly, the numerosity requirement is fulfilled.

### 2. Commonality

■ There must be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "The fact that there is some factual variation among the class grievances will not defeat a class action .... A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1017–18 (7th Cir.1992), *cert. denied*, 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998). "All questions of fact and law need not be common to satisfy the

---

7. Judge Burrell did not specifically address the requirements of Rule 23(a) presumably because he found plaintiffs did not satisfy the requirements of Rule 23(b).

rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). A common nucleus of operative fact is typically found where "defendants have engaged in standardized conduct toward members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele*, 149 F.3d at 594.

■ Here, all proposed class members were sent standardized collection letters by ECS demanding payment of a $20 service charge and representing that the charge was authorized under California law. Thus, their claims all involve the common question of whether ECS's standardized practice violated the FDCPA and/or the CUBPA. Because the relief sought by the class "turn[s] on questions of law applicable in the same manner to each member of the class," the commonality requirement is satisfied. *See General Tel. Company of Southwest v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *see also Keele*, 149 F.3d at 596 (certifying class where standardized collection notices mailed to all members of proposed class); *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D.Ga.1983) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action...."); *Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 116 (D.Kan.1995) (certifying class where contracts signed by all class members contained virtually same provision as that challenged by class representative). Accordingly, the commonality requirement is satisfied.

### 3. Typicality

■ The "claims or defenses of the class representative must be typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)).

■ Here, by mailing the standardized letters seeking the $20 service charge and representing that the charge was authorized under California law, ECS engaged in the same course of conduct towards Gary Ballard and the members of the class. These individuals are now suing ECS under the FDCPA and CUBPA, alleging violations of the same statutory sections under the same legal theory. Accordingly, the typicality requirement is satisfied.

### 4. Adequacy of Representation

■ The final prerequisite under Rule 23(a) is that the person representing the class must be able "fairly and adequately to protect the interests" of all members in the class. Fed.R.Civ.P. 23(a)(4). Representation is adequate where: (1) the attorney representing the class is qualified and competent; (2) the class representative does not have interests antagonistic to the remainder of the class, *see Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); and (3) the class representative has a sufficient interest in the outcome of the case to ensure vigorous advocacy, *see Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D.Ill. 1986).

Counsel's past experience and performance in this case illustrate that he has sufficient expertise and experience to represent the proposed class.

■ ECS argues that plaintiff Gary Ballard is an inadequate class representation because the counterclaim asserted against him by ECS is less than counterclaims asserted by ECS against other members of the putative class. More specifically, Gary Ballard's check cleared on redeposit. Thus, ECS's counterclaim against him does not include the face value of the check, only the service charge and other damages incurred in the collection of the debt. Class members whose checks did not clear on redeposit, however, are potentially liable for the face value of the check, in addition to the service charge and other damages.

The mere existence of a counterclaim does not preclude class certification. Were it otherwise, every motion for class certification would be defeated simply by the vehi-

cle of filing a counterclaim against the named plaintiffs. It is only where a counterclaim raises a conflict between the interests of the named plaintiff and the absent class members that causes adequacy of representation to be lacking.

*Heartland Communications, Inc.,* 161 F.R.D. at 116.

■ According to ECS, the face value of the unpaid checks average $100.26. The court is not persuaded that Gary Ballard is less inclined to vigorously pursue this case because his potential liability is approximately $100 less than other class members.[8] Accordingly, representation is adequate.[9]

### C. RULE 23(b)(2)

■ Under Rule 23(b)(2), class certification may be appropriate where a defendant acted or refused to act in a manner applicable to the class generally, rendering injunctive relief or declaratory relief appropriate to the class as a whole. Fed.R.Civ.P. 23(b)(2). ECS's alleged conduct in adopting and implementing a policy and practice of demanding and collecting allegedly unauthorized charges is conduct "generally applicable" to the proposed class. Plaintiffs seek declaratory relief and statutory and individual damages under the FDCPA and injunctive relief and restitution under the CUBPA. Rule 23(b)(2) generally does not extend to cases in which the appropriate final relief relates primarily to money damages. *See Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 450–51 (N.D.Ca.1994) (citing Rules Advisory Committee Notes to 1966 Amendments to Rule 23, reprinted at 39 F.R.D. 69, 102 (1966)). However, "[c]lass actions certified under Rule 23(b)(2) are not limited to actions requesting injunctive and declaratory relief, but may include cases that also seek monetary damages." *Probe v. State Teachers' Retirement Sys.,* 780 F.2d 776, 780 (9th Cir.),

*cert. denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986).

■ Here, plaintiffs' request for monetary damages is secondary to their primary claim for declaratory and injunctive relief to prohibit ECS from continuing to pursue the $20 service charge. The declaratory and injunctive relief requested will affect more persons and have consequences over a greater period of time than monetary damages. These claims will affect all class members, not only those who paid the service charge. Injunctive relief is especially important here where ECS has filed counterclaims against Gary Ballard and members of the putative class for service charges, the underlying debts on dishonored checks and/or other damages allegedly owed to ECS.[10]

■ In its opposition to plaintiffs' motion for reconsideration, ECS asserts that plaintiffs' requests for injunctive relief are moot because (1) ECS no longer attempts to collect on pre-January 1, 1997 unpaid checks and/or service charges, and (2) ECS does not refuse to authorize checks for consumers who have only unpaid service charges. During oral argument, ECS clarified this representation, stating that it has exhausted its normal collection procedures (the standardized letter procedure outlined above) as to pre-January 1, 1997 unpaid checks and/or service charges. ECS confirmed, however, that it will continue to pursue its counterclaims against any party who asserts a claim against it.[11] Accordingly, certification under Rule 23(b)(2) on the issues of liability, declaratory relief and statutory damages under the FDCPA and injunctive relief and restitution under the CUBPA is appropriate.

### D. RULE 23(b)(3)

Plaintiffs seek only to certify the issue of actual damages as authorized under the

---

**8.** As discussed *infra* in section D.1.d. of this order, ECS's counterclaims are dismissed without prejudice. The court discusses the potential conflict arising from such counterclaims in the event ECS re-files its claims in state court.

**9.** ECS's arguments concerning Nancy Ballard are moot as plaintiffs no longer seek certification of a class of individuals from whom ECS verbally demanded payment of a service charge nor do they seek to have Nancy Ballard serve as a class

representative. Indeed, Nancy Ballard is not a member of the proposed class and would appear to have no further role in this case.

**10.** ECS estimates the value of said claims at over $75 million.

**11.** While ECS's counterclaims are dismissed without prejudice, *see infra* section D.1.d., ECS is free to pursue its claims in state court.

FDCPA under Rule 23(b)(3). Class certification pursuant to Rule 23(b)(3) requires a determination that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### 1. Predominance

██ "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon,* 150 F.3d at 1022 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997)). "Rule 23(b)(3) focuses on the relationship between the common and individual issues. 'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.' " *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)).

The primary and predominating question in this case is whether ECS's standardized conduct in sending out collection letters demanding a $20 service charge and representing that the charge was authorized under California law violated the FDCPA and CUBPA. *See Amchem Prods., Inc.,* 117 S.Ct. at 2250 ("Predominance is a test readily met in certain cases alleging consumer ... fraud....")

ECS contends the following issues must be determined on a case by case basis and predominate over issues common to the class:

### a. *Whether The Service Charged Was Permitted By Law*

██ The FDCPA prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) *unless such amount is expressly authorized by the agreement creating the debt or permitted by law.*" 15 U.S.C. § 1692f(1) (emphasis added).

██ In its opposition to plaintiffs' motion for certification, ECS argues that its $20 service charge was permitted by law as an incidental damage under Cal. Comm.Code §§ 2709 & 2710. Thus, ECS contends, individual questions regarding the determination of incidental damages exist and predominate over questions common to the class. Judge Burrell relied on this contention in denying plaintiffs' motion for certification. *See* Order Denying Class Certification, filed September 9, 1997, 5:8–16. In its August 17, 1998 order granting summary adjudication as to certain issues, however, this court held the service charge was not recoverable as an "incidental damage" by the holder of a check (as opposed to the seller), and thus, was not permitted by law under Cal. Comm.Code §§ 2709 & 2710 as argued by ECS. Accordingly, the individual questions as to incidental damages raised by ECS no longer exist.

### b. *Whether The Service Charged Was Expressly Authorized*

In its opposition to plaintiffs' motion for certification, ECS also argues that, "[i]t is well-established that ECS can collect a service charge in addition to the face amount of a dishonored check if there is 'a posted sign on the merchant's premises warning of such a charge' and it can be shown that the check writer saw the notice." Opposition, 3:15–17. Accordingly, ECS contends that, "[t]he question, then, *for each and every class member,* is whether, at the time he or she wrote their dishonored checks, the notice was in fact, posted in plain view and, if so, whether the check writer saw the notice." *Id.,* 31:5–7 (emphasis in original). Judge Burrell relied on these representations in denying the motion for certification.

A determination of whether the service charges were expressly authorized would necessarily involve an analysis of a myriad of individual contracts between individual merchants and the check writers to determine whether the agreements included promises not only to pay for the goods purchased during the underlying transaction, but also to pay a service charge in the event the checks were dishonored. *Id.,* 5:2–8.

In its August 17, 1998 order, this court held that, in the case of Gary Ballard, ECS

could not establish that the service charge was expressly authorized by the agreement creating the debt where ECS's sole evidence of such was its subscriber agreement requiring the retailer to "display Equifax-supplied service-charge notices at the point-of-sale in each of its Locations ... so that they are clearly visible to all Checkwriters." Plaintiffs now contend that this ruling applies equally to all putative class members because ECS's only evidence that a service charge was expressly authorized is its subscriber agreements. ECS disputes plaintiffs' contention. It contends that the court's August 17, 1998 order was limited to the Gary Ballard transaction, and that individual inquiries must be made to determine whether (1) each subscriber posted the notice of the service charge, and (2) each of the putative class members saw the notice.

This court finds ECS's argument to now require individual proof of express authorization somewhat disingenuous, for at the time ECS mailed some 1.4 million letters demanding payment of a $20 service charge, it made no effort to establish express authorization on a case by case basis. It certainly had no such evidence in the case of Gary Ballard.[12] Rather, ECS chose to rely on its subscriber agreements to establish express authorization in order to collect the service charges. Indeed, the precise question of whether the charges were individually "expressly authorized" was purposefully left unanswered by ECS's "contracting" method with the check writers.[13] Now when faced with refunding the same charges it has collected, ECS contends that it must establish on a case by case basis that the charges were expressly authorized by individual contracts with check writ-

ers. It appears that ECS has reaped the benefits of that method and now argues that method is wholly inadequate to determine the question of authorization.

As recently noted by the Seventh Circuit, "[T]he FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists.... We must focus on the debt collector's misconduct, not whether the debt is valid, or as here, whether the consumer has paid an invalid debt ...." *Keele*, 149 F.3d at 594. By focusing on the conduct of ECS, i.e. the contracting method deliberately chosen by ECS, the court finds that any potential individual issues will not predominate over issues common to the class. In the event individual issues of proof do arise, the court is confident such issues can be dealt with in a manner which will not require the testimony of each and every check writer and/or merchant.

### c. *Consumer Debt*

■ The FDCPA regulates the collection of consumer, not business, debt. Consumer debt is that incurred "primarily for personal, family or household purposes." 15 U.S.C. § 1692(a)(5). ECS contends that determinations of whether a given transaction was for business or consumer purposes will have to be made on a case by case basis, and that such determinations predominate over issues common to the class. The court disagrees.

"[T]he need to determine the consumer nature of a debt does not automatically preclude class certification. Instead, courts should examine the general nature of the debts and the ease of separating consumer from business debts finding class certification

---

**12.** When asked to admit that "[n]either plaintiff agreed to pay $20 as a service charge in connection with check no. 3146 if that check did not clear," ECS responded, "Denied. All ECS subscribers, including Reebok Factory Direct, are required to post a notice advising of the service charge, in clear view of all customers."

**13.** This court has serious doubts that an express authorization agreement with the check writer could ever arise from the contracting method employed by ECS. The formation of a contract requires mutual assent. *See Newman v. Checkrite,* 912 F.Supp. 1354, 1368 (E.D.Cal.1995) (citing Cal. Civ.Code §§ 1550 and 1565 (West 1982);

1 Witkin, Summary of California Law: Contracts § 119 (1987)). "Mutual assent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding." *Id.* (quoting Witkin, Summary of California Law: Contracts § 119 (1987)). Under the contracting method employed by ECS, ECS could not have known whether the check writer saw, understood the nature of, or much less expressly agreed to the charge before ECS demanded payment of the charge. ECS simply relied on the presumed knowledge and unexpressed intentions of the check writer when it demanded the charge.

appropriate in a variety of circumstances." *Berrios v. Sprint Corp.*, 1998 WL 199842 at *9 (E.D.N.Y.1998). In *Berrios,* the court found that the question of consumer debt did not overwhelm the common questions of law and fact where: (1) the class encompassed only residential telephone account holders; (2) defendants already identified the residential account holders who received the form letter at issue; and (3) it was in defendants' interests to provide residential services only to those who used their accounts primarily for personal, family or household purposes. *Id.*

Likewise, in the present case, (1) ECS has already identified the number of California residents from whom it demanded payment of a service charge, (2) ECS's demands were made via letter, accordingly, the individuals to whom such letters were sent are easily identifiable by ECS, (3) according to its annual report, ECS provides "check authorization and guarantee services, primarily for retail industries," and (4) ECS categorizes checks as either "personal" or "business" in its computerized database.

Notwithstanding the above, ECS maintains that individual inquiries are still necessary to determine the purpose of the underlying transaction. It contends that its own after the fact characterization of the transaction fails to answer this question. While ECS's characterization alone may not answer the question, the circumstances of this case are such that consumer transactions can be identified with relative ease and accuracy. Accordingly, the court finds that determinations of whether each transaction involved a "consumer debt" do not predominate over issues common to the class.[14]

### d. *Counterclaims*

In response to plaintiffs' complaint, ECS filed counterclaims against Gary Bal-lard for the $20 service charge and other damages and against the members of the putative class for service charges, the underlying debts on dishonored checks and/or other damages allegedly owed to ECS. Plaintiffs moved to dismiss ECS's counterclaims. One of the basis for plaintiffs' motion was their contention that the court lacked supplemental jurisdiction over the counterclaims because they were permissive rather than compulsory. In denying plaintiffs' motion, Judge Burrell held that ECS's counterclaims were compulsory, and thus, the court had supplemental jurisdiction over the counterclaims under 28 U.S.C. § 1367(a).[15]

The parties did not raise and the court did not address, however, whether the court should decline to exercise jurisdiction pursuant to 28 U.S.C. § 1367(c).[16] This court raises the issue sua sponte, *see Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1000 (9th Cir. 1997), and for the reasons set forth below, declines to exercise supplemental jurisdiction over ECS's counterclaims. *See* 28 U.S.C. § 1367(c)(4). Pursuant to section 1367(c)(4):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The court finds that there are compelling reasons of public policy embodied in the FDCPA for declining jurisdiction in this case. *See Crawford v. Equifax Payment Svs., Inc.,* 1998 WL 704050, *6 (N.D.Ill.1998).

> [T]o allow a debt collector defendant to seek to collect the debt in the federal action to enforce the FDCPA might well have a chilling effect on persons who otherwise might and should bring suits such as this .... Given the remedial nature of the FDCPA and the broad public policy it

---

**14.** As noted above, in the event individual issues of proof do arise, the court is confident such issues can be dealt with in a manner which will not require the testimony of each and every check writer and/or merchant.

**15.** Subsection 1367(a) provides in pertinent part that "[e]xcept as provided in subsections (b) and (c) ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III...."

**16.** Subsection 1367(c) provides that the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) under certain circumstances enumerated therein.

serves, federal courts should be loath to become immersed in the debt collection suits [brought by] the target of the very legislation under which the FDCPA plaintiff states a cause of action.

*Id.* at *7 (quoting *Leatherwood v. Universal Business Serv. Co.*, 115 F.R.D. 48, 49–50 (W.D.N.Y.1987)). Accordingly, ECS's counterclaims are dismissed without prejudice, and thus, the claims do not prevent certification under Rule 23(b)(3).

### e. *"Debt" Within The Meaning of the FDCPA*

In its opposition to plaintiffs' motion for class certification, ECS contends that the court will have to determine on an individual basis whether the check in question constituted a "debt" within the meaning of the FDCPA. After ECS filed its opposition, the Ninth Circuit held that "[a] dishonored check constitutes an FDCPA 'debt'...." *Charles v. Lundgren & Assocs.*, 119 F.3d 739, 742 (9th Cir.1997) (citing *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322 (7th Cir.1997)). Consequently, the individual issues contemplated by ECS do not exist.[17]

### 2. Superiority

■ In determining superiority of a class action to individual litigation, courts consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action. Fed.R.Civ.P. 23(b)(3); *see also Amchem Prods., Inc.*, 117 S.Ct. at 2246.

■ The court finds that a class action in this context is superior to individual claims. First, individual consumers are most likely unaware of their rights under the FDCPA. Class action certifications to enforce compliance with consumer protection laws are "desirable and should be encouraged." *See Duran v. Credit Bureau of Yuma, Inc.*, 93 F.R.D. 607, 610 (D.Ariz.1982) (citing *Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398,

404 (6th Cir.1980)). Second, the size of any individual damages claims under the FDCPA are usually so small that there is little incentive to sue individually. *See Amchem Prods., Inc.*, 117 S.Ct. at 2246. Third, efficiency and consistency of concerns favor litigating the legality of ECS's standardized conduct by all class members in one suit, rather than forcing each class member to sue individually. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 188–89 (N.D.Ill.1992).

Finally, while valid concerns regarding the manageability of the class exist in relation to liability, they are not sufficient to defeat certification. Manageability is not a separate area of inquiry in considering certification under Rule 23(b)(3), but merely a secondary problem to consider. *Gulish v. United States*, 78 F.R.D. 515, 518 (W.D.Pa.1978). The more important considerations remain the predominance of common questions and superiority of the class action. *Id.* "Manageability problems must be factual, unavoidable obstacles to the litigation before they can be considered obstacles to class certification." *Id.* at 517. Accordingly, the court finds a class action a superior means of adjudicating this case.

Accordingly, certification of the issue of actual damages is proper under Rule 23(b)(3).

### E. NOTICE TO CLASS MEMBERS

Notice to the class will be addressed initially at the April 29, 1999 status conference.

### CONCLUSION

1. Plaintiffs' motion for class certification is GRANTED. Named plaintiff Gary Ballard is certified as the representative of the class defined as follows:

All California consumers on whose claims the statute of limitations has not run who were sent, or will be sent during the pendency of this action, a letter by defendant ECS, demanding payment to ECS of a

---

**17.** ECS also argues that individual inquiries are necessary to determine whether each check writer intended to defraud the merchant in writing the check. The court declines ECS's invitation to read a fraud exception into the FDCPA where none exists in its text. *See Keele*, 149 F.3d at 596 (holding there is no fraud exception to the FDCPA, thus it is irrelevant whether members of the class may have intended that their checks would be dishonored).

service charge for collecting a dishonored check written prior to January 1, 1997.

2. It is FURTHER ORDERED that the issues of liability, declaratory relief and statutory damages under the FDCPA and injunctive relief and restitution under the CUBPA for those class members who did not pay any portion of the service charge demanded is CERTIFIED under Rule 23(b)(2).

3. It is FURTHER ORDERED that the issue of actual damages under the FDCPA for those class members who paid any portion of the service charge demanded is CERTIFIED under Rule 23(b)(3).

4. It is FURTHER ORDERED that ECS's counterclaims are DISMISSED WITHOUT PREJUDICE.

5. It is FURTHER ORDERED that a status conference in this matter is set for April 29, 1999 at 10:00 a.m.

6. It is FURTHER ORDERED that the hearing on defendant's motion to enter judgment and set hearing on fees and costs set for April 29, 1999 at 10:00 a.m. is VACATED.

IT IS SO ORDERED.