**Timothy M. SANTORO, on behalf of himself and all similarly situated persons, Plaintiff,**

v.

**AARGON AGENCY, INC., a Nevada corporation, Does I–V, inclusive, and Roe Corporations VI–X, inclusive, Defendants.**

No. 2:07–cv–1003–RLH–PAL.

United States District Court, D. Nevada.

Oct. 14, 2008.

As Corrected Oct. 21, 2008.

Brian L. Bromberg, Bromberg Law Office, P.C., New York, NY, Craig B. Friedberg, Law Offices of Craig B. Friedberg, Las Vegas, NV, for Plaintiff.

David J. Kaminski, Carlson & Messer, Los Angeles, CA, Bruce Scott Dickinson, Michael E. Hottman, Stephenson & Dickinson, Las Vegas, NV, for Defendants.

## ORDER

ROGER L. HUNT, Chief Judge.

Before the Court is Plaintiff's **Motion for Class Certification** (# 20), filed July 4, 2008, and Errata thereto (# 21), filed July 18, 2008. The Court has also considered Defendant Aargon Agency, Inc.'s ("Aargon") Opposition (# 22), filed July 22, 2008, and Plaintiff's Reply (# 31), filed September 17, 2008.

## BACKGROUND

On July 28, 2006, Aargon sent form collection letters to 10,016 persons with Nevada addresses, including Plaintiff, demanding payment of consumer debt. (Dkt. # 20, Mot. Attach., Decl. of Aargon Agency, Inc. ("Aargon Decl.") ¶ 4.) According to Plaintiff, each of the letters sought collection of past University Medical Center ("UMC") medical bills purchased by OPS 2, LLC, the company that assigned the accounts to Aargon for collection. Some time after Plaintiff received

Aargon's letter, Aargon filed suit against Plaintiff. (Dkt. # 20, Mot. Attach., Pl.'s Decl. in Supp. of Class Certification ("Pl.'s Decl.") ¶ 4.) Plaintiff, in turn, filed this class action against Aargon on July 27, 2007, alleging Aargon's letter violated the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. §§ 1692–1692p (2006), Nevada Revised Statutes chapters 598 et seq. and 649 et seq., and the common law of torts, all of which accordingly prohibit debt collectors from engaging in abusive, deceptive, harassing, unfair, and illegal practices. Plaintiff concedes he did not pay any money to Aargon, and thus did not suffer any actual damages as a result of receiving the letter.

Plaintiff's amended class action complaint (Dkt. # 8) alleges Aargon's letter violated the FDCPA and Nevada statutes by (1) failing to include language notifying consumers of their right to receive verification of the debt by sending the debt collector written notice that they dispute the debt (citing 15 U.S.C. §§ 1692g(a)(4), 1692g(b)); (2) failing to itemize, and attempting to collect, any additional charges or interest added by the debt collector to the amount claimed by the creditor (citing 15 U.S.C. §§ 1692e(2), 1692e(5), 1692f(1), 1692g(a)(1), and Nev.Rev.Stat. § 649.375(2) (2004)); and (3) listing the name of the debt collector as the "original creditor" (citing 15 U.S.C. §§ 1692g(a)(1), 1692e, 1692e(2), 1692e(10), 1692f). In his amended complaint, Plaintiff requests an award of statutory damages, actual damages, costs, attorney fees, and relief in the form of a declaration that Aargon's form letter violates the FDCPA.

Plaintiff now moves to certify the following class of persons pursuant to Federal Rule of Civil Procedure 23:

All consumers who, according to Defendants' records, have mailing addresses within Nevada and, between July 26, 2006[,] and July 27, 2007, were sent collection letters in a form materially identical or substantially similar to the letter sent to the Plaintiff on or about July 28, 2006, . . . which were not returned by the postal service as undelivered.[1]

1. Plaintiff's opening memorandum added an additional attribute to the proposed class not in-

Plaintiff claims the entire proposed class is entitled to statutory damages and those class members who paid Aargon as a result of the letter are entitled to actual damages. (Mot. 12.) For the reasons stated below, the Court grants Plaintiff's motion.

## DISCUSSION

Rule 23 provides four prerequisites to certifying a federal class action: (1) numerosity (the class must be so large "that joinder of all members is impracticable"); (2) commonality (there must exist "questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical ... of the class"); and (4) adequacy of representation (the representative must be able to "fairly and adequately protect the interests of the class"). *See* Fed.R.Civ.P. 23(a); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998) (citing *Amchem Prods.*, 521 U.S. at 613, 117 S.Ct. 2231). A district court may certify a class only if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). To that end, the Court "must receive enough evidence, by affidavits, documents, or testimony," to enable it to make an appropriate determination. *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir.2006). If the court is so satisfied, it must enter an order that "define[s] the class and the class claims, issues, or defenses," and appoints class counsel pursuant to Rule 23(g). Fed.R.Civ.P. 23(c)(1)(B). Additionally, as with a plaintiff bringing a case individually, one seeking to represent a class must have standing to do so. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215–17, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

The proposed class representative bears the burden of showing she meets the require-ments of Rule 23(a), and she must also show satisfaction of one of the three subsections of Rule 23(b). *Dukes v. Wal–Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir.2007); Fed.R.Civ.P. 23(b). Of these subsections, Plaintiff seeks certification only under Rule 23(b)(3), which requires the Court to find (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The Court considers the requirements of Rules 23(a) and 23(b) in turn.

## I. Requirements of Rule 23(a) and Standing

### A. Numerosity (Rule 23(a)(1))

Plaintiff claims the proposed class—approximately 10,000 in number—"is so numerous that joinder of all members is impracticable," Fed.R.Civ.P. 23(a)(1), and Aargon does not contend otherwise. The Court agrees the numerosity requirement is satisfied. *See Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir.2003).

### B. Commonality (Rule 23(a)(2))

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The commonality requirement "has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019 (quoted in *Dukes*, 509 F.3d at 1177). The Ninth Circuit has also noted that "[t]he commonality test is qualitative rather than quantitative—one significant issue common to the class may be sufficient to warrant certification." *Dukes*, 509 F.3d at 1177 (citations omitted).

cluded in his amended complaint—"and/or who paid money to Defendants after receipt of a letter substantially similar to" the letter sent to Plaintiff. (*See* Mot. 13.) Plaintiff's addition of this component precipitated substantial opposition from Aargon. (*See generally* Opp.) In his Reply,

Plaintiff withdrew the additional attribute and urged certification of the proposed class defined in the amended complaint. (Reply 11 & n. 25.) The Court therefore does not address those of Aargon's arguments rendered moot by Plaintiff's withdrawal of the additional attribute.

■ Aargon's Chief Executive Officer stated the form letter at issue was sent to 10,016 persons with Nevada addresses. (Aargon Decl. ¶ 4.) Plaintiff alleges "the question common to all of the potential class members is whether the letter ... violated various provisions of the FDCPA." (Mot. 5–6; *see also* Dkt. # 8, Am. Compl., ¶ 20(b).) Plaintiff has satisfied Rule 23(a)(2)'s "permissive" commonality requirement by demonstrating (1) a significant question of fact common to each member of the proposed class (i.e., whether the letter in question was sent to his or her address); and (2) a significant question of law common to each member of the proposed class (i.e., whether the letter violated the FDCPA). *See* Fed.R.Civ.P. 23(a)(2); *Ballard v. Equifax Check Servs.*, 186 F.R.D. 589, 595 (E.D.Cal.1999) (concluding commonality requirement met in FDCPA-class members' receipt of form collection letters); *id.* (collecting cases certifying classes based on defendants' use of standardized contract language or form letters) (citations omitted); *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 250 (E.D.Pa.2006).

### C. Typicality (Rule 23(a)(3)) and Standing

■ While "[c]ommonality examines the relationship of facts and legal issues common to class members, ... typicality focuses on the relationship of facts and issues between the class and its representatives." *Dukes,* 509 F.3d at 1184 n. 12. Specifically, Rule 23(a)(3) requires a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020 (quoted in *Dukes,* 509 F.3d at 1184). The typicality requirement is satisfied if the claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996). In addition, the requirement may be satisfied even when "there is a disparity in the damages claimed by the representative parties and the other class members." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1764 & n. 13 (2d ed.1995); *see also id.* (collecting cases); *Macarz v. Transworld Sys., Inc.,* 193 F.R.D. 46, 50–51 (D.Conn. 2000) (certifying plaintiff-representative in FDCPA case even though plaintiff did not suffer actual damages and was accordingly not entitled to statutory damages).

■ Typicality relates to standing. To demonstrate standing in a class action lawsuit, the class representative "must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger,* 418 U.S. at 216, 94 S.Ct. 2925 (citations omitted).

■ Plaintiff alleges Aargon's letter violates the FDCPA and portions of Nevada law proscribing improper trade and debt-collection practices. Plaintiff concedes he did not pay any money to Aargon, and thus did not suffer any actual damages as a result of receiving the letter. His amended complaint nonetheless requests an award of both actual and statutory damages. (Reply 2–3.) Aargon argues that because Plaintiff did not suffer actual damages, his claims are not typical of those in the putative class who did. (*See* Opp'n 8–9.) For that reason, Aargon claims Plaintiff also lacks standing to represent the proposed class. (*See id.* 16–17.) Plaintiff argues this difference is not sufficient to defeat a finding of standing or typicality. (Reply 4 (citations omitted).) The Court agrees with Plaintiff on both issues.

■ In *Keele v. Wexler,* the Seventh Circuit considered whether a potential class representative who may not have paid an alleged illegal collection fee had standing to represent putative class members who did. The court noted that both the plaintiff and the putative class received letters that purportedly violated the FDCPA. The court concluded the plaintiff had standing to represent putative class members who paid the allegedly illegal fee: "[t]he damages recoverable for the class members' injuries may differ—some may be eligible for both actual and statutory damages, others actual damages

only, and *still others just statutory relief*—but the fact remains that *their injuries are the same.*" 149 F.3d 589, 593 (1998) (emphasis added). Thus, as to the issue of standing, "[t]he FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages." *Id.* (citing *Baker v. G.C. Servs. Corp.,* 677 F.2d 775, 781 (9th Cir.1982)) (other citation omitted). "In other words, the Act is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not." *Keele,* 149 F.3d at 594. Hence, Plaintiff, who concedes to have suffered only statutory damages, would plainly have standing under the FDCPA if bringing the case only in his individual capacity, and Aargon does not argue otherwise. (*See* Opp'n 8.) Applying *Keele* to the case *sub judice,* the Court concludes Plaintiff's lack of actual damages does not deprive him of standing to represent class members who have.

Plaintiff's claims are also typical, within the meaning of Rule 23(a)(3), of those of the class he seeks to represent: their claims and his alike arise from receipt of the same form letter, which purportedly violates portions of the FDCPA and Nevada law proscribing improper trade and debt-collection practices. Given the commonality of the letter in question, the general similarity of Plaintiff's claims and those of the putative class, and the permissive nature of the typicality requirement, the Court concludes the requirement has been satisfied.

### D. Adequacy of Representation (Rule 23(a)(4))

■ Adequacy requires the Court to find that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In addition to the plain language of the Rule, the Ninth Circuit has articulated two criteria for determining adequacy: (1) "the proposed representative Plaintiffs do not have conflicts of interest with the proposed class," and (2) "Plaintiffs are represented by qualified and competent counsel." *Dukes,* 509 F.3d at 1185 (citations omitted); *see also Walters v. Reno,* 145 F.3d 1032, 1046 (9th Cir.1998) ("Whether the class representatives satisfy

the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive") (citations and internal quotation marks omitted); *Amchem Prods.,* 521 U.S. at 625, 117 S.Ct. 2231; *Golden v. Local 55 of Int'l. Ass'n of Firefighters,* 633 F.2d 817, 824 (9th Cir.1980) ("The rule is that a named representative for a plaintiff class must be injured in the same way as all members of the class") (citation omitted).

■ Craig B. Friedberg and Brian L. Bromberg, counsel for Plaintiff and proposed counsel for the putative class, claim to have extensive experience litigating consumer-protection cases in federal and state courts in locations including Nevada and New York, which cases have accordingly resulted in many published opinions. (Mot. 8–9 & nn. 29–31.) Bromberg, in particular, claims to have litigated many class action suits concerning alleged violations of the FDCPA. Plaintiff's counsel thus appear qualified and competent to prosecute the case, and Aargon does not argue otherwise.

Aargon, however, argues Plaintiff himself cannot adequately represent the putative class for three reasons. First, Aargon argues Plaintiff cannot adequately represent the proposed class because, given that he purports to have suffered only statutory damages, his stake in the case is not coextensive with putative class members who suffered actual damages. Second, Aargon contends Plaintiff lacks the financial resources to prosecute this action on behalf of the proposed class. To support this assertion, Aargon points to Plaintiff's declaration accompanying Plaintiff's Motion for Class Certification, where Plaintiff states he has arranged for his counsel to advance all costs of this action, including the cost of notification to the class, while remaining responsible for his pro rata share of all costs. (Opp'n 12 (citing Pl.'s Decl. ¶ 9).) Third, Aargon argues that if it ultimately proves Plaintiff's case was brought in bad faith and for the purpose of harassment, the Court may, under the FDCPA, award Aargon its attorney fees. (Opp'n 12 & n. 42 (citing 15 U.S.C.

§ 1692k(a)(3)).) Given that Plaintiff's stake in the litigation is limited to recovery of statutory damages, Aargon claims, Plaintiff has an incentive to settle his claim for statutory damages without risking liability for his pro rata share of Aargon's attorney fees by asserting the "frivolous" claims for actual damages on behalf of the putative class. (Opp'n 12.) Thus, under Aargon's third argument, Plaintiff's interests accordingly conflict with those of the proposed class.

■ It is true that, under the FDCPA, any individual plaintiff or named plaintiff in a class action who alleges only statutory damages cannot recover more than $1000, whereas, by contrast, individuals with actual damages can recover both actual damages and statutory damages. *See* 15 U.S.C. § 1692k(a). Hence, Plaintiff's interests in this action are not precisely coextensive with those of putative class members who have suffered actual damages. However, as noted in *Keele,* recipients of the same form letters purportedly in violation of the FDCPA are considered, at least for purposes of the proposed representative's standing, to have suffered the same injury. 149 F.3d at 593. Moreover, under Rule 23(a)(4), precise alignment of the representative's interest in the case with those of putative class members is not required; what matters is sufficient coextensiveness of interests and the representative's "abilit[y] to pursue the class claims vigorously and represent the interests of the absentee class members." *Walters,* 145 F.3d at 1046; *see also* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *supra,* § 1769 & n. 2 (stating positions of representative and putative class do not "have to be identical. Rather, ... the representatives and the class members must share common objectives and legal or factual positions to establish adequacy of representation") (collecting cases). The Court finds Plaintiff has met his burden in this regard. Plaintiff has moved for class certification in a timely fashion, and his declaration indicates he understands the nature of a class suit his potential role as a representative, his "responsibility to see that the lawyers prosecute the case on behalf of the entire class," and his willingness to act in that representative capacity. (Pl.'s Decl. ¶ 8.) Plaintiff has thus demonstrated

sufficient interest, willingness, and ability to pursue his claims and those of the putative class to satisfy Rule 23(a)(4). *See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir.2001). However, though not dispositive, Aargon's concern with the imperfect alignment of Plaintiff's interests relative to those of putative class members with actual damages is well-taken. If in the process of identifying members of the class, persons who suffered actual damages as a result of Aargon's letter are found, the Court may consider ordering joinder of such a person as a co-class representative to ensure adequate representation of the entire class. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *supra,* § 1765 & n. 45.

■ Aargon's argument alleging Plaintiff's financial inadequacy is unpersuasive. Although a potential representative's financial means to bring the case is relevant to (and in some cases determinative in) the adequacy inquiry, a potential representative may be certified where, as here, counsel has arranged to advance litigation costs and the potential representative has agreed to pay his pro rata share of expenses. *See, e.g., Borcherding–Dittloff v. Transworld Sys., Inc.,* 185 F.R.D. 558, 564 (W.D.Wis.1999) ("That counsel advanced plaintiff her pro rata share of legal fees does not jeopardize her ability to serve as the class representative") (citing *Rand v. Monsanto Co.,* 926 F.2d 596, 599 (7th Cir.1991)).

Aargon's third argument against Plaintiff's adequacy fails for at least two reasons. First, it is really a variation of Aargon's first argument, which fails for reasons already stated. Plaintiff's lack of actual damages does not compel the conclusion that his interests conflict with those of putative class members with such damages. Second, Aargon's third argument largely depends on its allegation that this case is "frivolous" and that it was, within the meaning of 15 U.S.C. § 1692k(a)(3), brought in bad faith and for the purpose of harassment. However, Aargon offers no valid support for that allega-

tion, and the Court therefore considers it no further.

## II. Requirements of Rule 23(b)

The Court now considers Plaintiff's request for certification pursuant to Rule 23(b)(3), under which a court may certify a class suit only if it finds that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) the "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Subsection (b)(3) also enumerates four nonexhaustive "matters pertinent to these findings[:]"

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3)(A)-(D); *see also Amchem Prods.*, 521 U.S. at 615–16, 117 S.Ct. 2231. The Court considers the predominance and superiority criteria of subsection (b)(3) in light of the above quartet of factors. *See id.* at 615, 117 S.Ct. 2231.

### A. Predominance

█ Under Rule 23(b)(3), the Court must find "the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed.R.Civ.P. 23(b)(3). A plaintiff satisfies the predominance test when she shows "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir.2000) (citations and internal quotation marks omitted). This test, which is "far more demanding" than for commonality, *see Amchem Prods.*, 521 U.S. at 623–24, 117 S.Ct. 2231 (citation omitted), is generally not met, for example, in products liability actions where no one event or accident causes physical injury or property damage, *see In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 853 (9th Cir.1982). The predominance test is met, however, in "certain cases alleging consumer or securities fraud," *Amchem Prods.*, 521 U.S. at 624, 117 S.Ct. 2231 (citations omitted), especially where the fraud was "perpetrated on numerous persons by the use of similar misrepresentations[,]" Fed.R.Civ.P. 23(b)(3) advisory committee note to 1966 amendment, because of the "economies ... achieved by means of the class-action device" in such cases, *see id.* The predominance inquiry may be satisfied in such cases "despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." Fed.R.Civ.P. 23(b)(3) advisory committee note to 1966 amendment. Nonetheless, the Court notes that "a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." *Id.* (citations omitted).

█ In this case, members of the putative class are linked by a significant operative fact (having been sent Aargon's collection letter) and a primary legal issue arising therefrom (whether the letter violates the FDCPA and related Nevada law). These issues are subject to generalized proof and predominate over the issue of actual damages possibly suffered by individuals within the class—an issue likely subject to individualized proof—which the Court may be required to separately determine if Aargon is found liable. Moreover, the potential need to determine individual damages does not defeat the economy that would be achieved by certifying the case as a class action, at least as to the issue of liability.

### B. Superiority

█ To certify a class action, the Court must also find "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The superiority inquiry "necessarily involves a comparative evalu-

ation of alternative mechanisms of dispute resolution," *Hanlon*, 150 F.3d at 1023 (citation omitted), the most obvious of which "is to remit the class members to the institution of individual actions," 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *supra*, § 1779. "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.' " *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir.2001) (citations omitted).

Aargon contends a class action would be an inferior vehicle for resolving the dispute here because, assuming *arguendo* the members of the class are entitled to actual damages, a case-by-case inquiry would have to be made with respect to each specific debt Aargon attempted to collect through its letter. The inquiry would require a determination of the amount of the debt, the bases for adding any interest or other charges in each case, and any improper amounts paid to Aargon. Given the need for this fact-intensive investigation into class members' actual damages, Aargon argues, a class action is not the superior method to adjudicate the subject claims. In response, Plaintiff claims actual damages could be computed simply by (1) locating the amount of the alleged principal debt by referencing Defendant's records or subpoenaing hospital records, and then (2) ordering payment of damages in the amount of any funds received in excess of the alleged principal debt. (Reply 7–8.) Plaintiff additionally argues this process would be facilitated by use of Aargon's collection software, which "includes fields which identify the alleged debtor's name, address, age, gender, dates of service, the service charges and any amount that was paid directly to UMC or which UMC added to the charges before selling the account to Defendant's client." (Reply 8 (citing Reply Ex. 2, p. A00040 from Def.'s Supplemental Resp. to Pl.'s First Req. for Produc. of Docs).) Plaintiff contends computation of statutory damages would be similarly basic.

The Court notes, however, that the relevant provision of the FDCPA, 15 U.S.C. § 1692k(b), requires the court awarding damages to assess, in the cases of both individual and class actions, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, ... and the extent to which the debt collector's noncompliance was intentional." The statute adds two additional factors to class action considerations: "the resources of the debt collector, [and] the number of persons adversely affected[.]" 15 U.S.C. § 1692k(b)(2). The inquiries mandated by the statute would thus complicate, to some degree, the process of determining damages.

Under the FDCPA, all class members with actual damages are entitled to recovery of them, and each named plaintiff is entitled to recover up to $1000 in statutory damages. 15 U.S.C. § 1692k(a). However, in a class action, the FDCPA caps statutory damages for all non-named class members at, in aggregate, the lesser of $500,000 or one percent of a debt collector's net worth. *See id.* Based on this provision and upon Aargon's representations of its net worth during the relevant time period, Aargon claims that the maximum statutory damages the non-named class members could be awarded is $4000, or less than 40 cents for each non-named member of the class. (The accuracy of this allegation and the bases from which it was derived have yet to be determined.) In contrast to the FDCPA's cap on statutory damages in class actions, Aargon accurately argues, members of the putative class could fare far better in individual actions, as to which the FDCPA permits recovery of actual damages, statutory damages up to $1000, and attorney fees for each individual plaintiff. *See id.* Because the members of the class could fare better in cases brought individually rather than as a class, Aargon argues, a class action is not the superior vehicle in which to adjudicate Plaintiff's claims.

█ A class suit is the superior method for resolving this dispute for at least two significant reasons. First and primarily, because this dispute concerns legal and factual issues shared by class members that are subject to generalized proof, class certification is more efficient than individual actions would be. Second, under the facts presented here, a class action would better carry out

the objectives of the FDCPA than would individual actions. The purposes of the Act are express: "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Baker,* 677 F.2d at 777. Given the broad and express purposes of the Act—to protect consumers and to eliminate abusive collection practices so completely as to eliminate any business advantage such practices may bestow—courts should favor use of the Act as a means to protect more, rather than fewer, affected consumers. Where appropriate, a class action seems therefore more suited than individual actions to effectuate the purposes of the Act. Indeed, the FDCPA expressly contemplates use of class actions, as indicated by its provision specifically addressing damages recoverable in that context. *See* 15 U.S.C. 1692k(a).

Although members of the proposed class could recover more under the Act if they brought their claims against Aargon individually, most of them are probably not aware of any such possible entitlement. Even if they were, many of them would likely be deterred from bringing suit individually because their potential recovery is limited to (1) actual damages; (2) additional (statutory) damages *"as the court may allow,* but not exceeding $1,000[;]" and (3) attorney fees and costs. 15 U.S.C. § 1692k(a) (emphasis added). In short, the statute assures prevailing plaintiffs recovery only of costs, attorney fees, and actual damages—which, in cases like this, are likely to be small. Any additional recovery is subject to the court's assessment of the nature, extent, and intent underlying the debt collector's noncompliance with the statute. *See* 15 U.S.C. § 1692k(b). The following statement from the Seventh Circuit Court of Appeals is thus apt here:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.... True, the FDCPA allows for

individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.

*Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997).

### C. Additional Pertinent Matters

Finally, the Court concludes none of the four factors enumerated in Rule 23(b)(3) undermine the superiority of the class suit mechanism here. Given the single instance of alleged misconduct used to define the class (i.e., sending of the subject letter); the purportedly uncomplicated process for determining damages; and the relatively small potential recoveries for the members of the putative class, "the class members' interests in individually controlling the prosecution or defense of separate actions" are likely minimal. Fed.R.Civ.P. 23(b)(3)(A). Additionally, neither party has presented the Court with information concerning "the extent and nature of any litigation concerning the controversy already begun by or against class members" other than Plaintiff's indication that Aargon brought suit against him at some time. Fed.R.Civ.P. 23(b)(3)(B). The Court therefore has no way of knowing the effect of Aargon's suit against Plaintiff on the suitability of a class action here or Plaintiff's qualifications to represent the class. In absence of any evidence or argument on this issue, the Court can conclude only that Aargon's suit has no impact on Plaintiff's Motion.

It appears desirable to concentrate litigation concerning Aargon's letter in this forum because Aargon's principal place of business is in Las Vegas, (Compl. ¶ 8; Answer ¶ 8), and all of the addresses to which the subject letter was sent are located in Nevada. *See* Fed.R.Civ.P. 23(b)(3)(C). Finally, "the likely difficulties in managing a class action" as contemplated here do not outweigh the superiority of the class action as a method to

resolve this dispute. Fed.R.Civ.P. 23(b)(3)(D). The Court notes, however, that "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (citing Fed.R.Civ.P. 23(c)(1)).

### III. Notice to Class Members

Notice to the class will be addressed initially at the December 12, 2008, status conference.

### CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion for Class Certification (# 20) is GRANTED. Named Plaintiff, Timothy M. Santoro, is CERTIFIED as the representative of the class defined as follows:

> All consumers who, according to Defendants' records, have mailing addresses within Nevada and, between July 26, 2006, and July 27, 2007, were sent collection letters in a form materially identical or substantially similar to the letter sent to the Plaintiff on or about July 28, 2006, which were not returned by the postal service as undelivered.

IT IS FURTHER ORDERED that the issues of liability, actual damages, statutory damages, and declaratory relief under the FDCPA are CERTIFIED under Rule 23(b)(3).

IT IS FURTHER ORDERED that Plaintiff's counsel, Craig B. Friedberg and Brian L. Bromberg, are APPOINTED counsel for the class under Rule 23(g).

IT IS FURTHER ORDERED a status conference in this matter is set for December 12, 2008, at 10:00 a.m.