

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-25-2002

# Sponaugle v. First Union Mtg

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3325

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Sponaugle v. First Union Mtg" (2002). *2002 Decisions.* Paper 437.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/437

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3325

HARRY LELOND SPONAUGLE; MARLENE SPONAUGLE, H/W,
INDIVIDUALLY AND ON BEHALF OF OTHERS
SIMILARLY SITUATED

v.

FIRST UNION MORTGAGE CORPORATION; JOHN DOES,
ONE THROUGH FIFTY

Harry Lelond Sponaugle and Marlene Sponaugle,

Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Civ. No. 01-cv-0042
District Judge: Hon. John P. Fullam

Submitted Pursuant to Third Circuit LAR 34.1
May 24, 2002
Before: ALITO, MCKEE, and WALLACE, Circuit Judges.

(Filed: July 25, 2002)

OPINION OF THE COURT

McKee, Circuit Judge.

Harry and Marlene Sponaugle brought various federal and state law claims against
First Union Mortgage Corporation in connection with First Union's assessment of a
$915.00 charge for attorneys' fees and costs. The Sponaugles claim that First Union's
efforts to collect these charges outside of the bankruptcy process violated the provisions
of the Bankruptcy Code as well as various state and federal debt collection laws, and that
they also breached the contract between the Sponaugles and First Union. The district
court granted summary judgment in favor of First Union on all counts, and the
Sponaugles now appeal. For the reasons that follow, we will affirm.

I.

Our review of the district court's order granting summary judgment is plenary. See
Jacobs Constr., Inc. v. NPS Energy Serv., Inc., 264 F.3d 365, 369 (3d Cir. 2001).
Accordingly, we view the evidence in the light most favorable to the non-moving party,
and determine if there is a genuine issue of material fact   See Waldorf v. Shuta, 896 F.2d
723, 728 (3d Cir. 1990). We affirm the district court's grant of summary judgment in
favor of First Union if the evidence, so viewed, establishes that First Union is entitled to
judgment as a matter of law.

II.

Inasmuch as we write only for the parties, we need not set forth the factual
background of this dispute except insofar as may be helpful to our brief discussion. We
will begin our analysis by determining if the district court erred in concluding that the
Sponaugles failed to establish actual injury, and therefore lack standing. The Sponaugles

claim that their mortgage account with First Union has been unlawfully assessed $915.00 and that First Union has already initiated collection efforts, thus establishing an injury in fact.

Standing is fundamentally a jurisdictional question. See AT&T Communications of New Jersey, Inc. v. Verizon New Jersey, Inc., 270 F.3d 162, 170 (3d Cir. 2001). In order to establish standing under Article III, a plaintiff must first demonstrate an injury in fact, which is: a) concrete and particularized; and b) actual or imminent, not conjectural or hypothetical. Second, a plaintiff must show a causal connection between the injury and the defendant's conduct. Third, the injury must be one that a court can redress. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Here, the record shows that First Union's attempts to collect the disputed charge is limited to two telephone calls and a subsequent letter requesting payment. However, since that letter was sent on December 4, 2000, First Union has not made any attempt to collect this fee. Moreover, First Union represents without contradiction that it sold the servicing rights to the Sponaugles' mortgage to Alliance Mortgage Company, and thus "has no interest in or connection to their loan . . . []". Thus, First Union claims that "any future collection effort by First Union is improbable." Br. of Appellee at 13. It is undisputed that the Sponaugles have never paid this fee nor any portion of it. Inasmuch as First Union has not taken any further efforts to collect, and apparently no longer has any right to undertake any such efforts, we agree that the Sponaugles can not demonstrate that any cognizable injury resulted from First Union's conduct. Any such injury is, at best, hypothetical and conjectural. Inasmuch as that is not sufficient to support standing, we conclude that the district court did not err in finding that the Sponaugles lack standing.

Although lack of standing is dispositive, see AT& T Communications, supra, we will nonetheless address the Sponaugles' remaining allegations as we conclude that they also lack merit.

The availability of interest, costs, and fees on a secured creditor's claim is governed by 11 U.S.C.  506(b), which provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C.  506(b) (1999). The Supreme Court has held that  506(b) "applies only from the date of filing [of the bankruptcy petition] through the confirmation date [of the Plan]." Rake v. Wade, 508 U.S. 464, 468; see also Telfair v. First Union, 216 F.3d 1333, 1338 (11th Cir. 2000). Thus, fees arising post-confirmation are not governed by  506(b). Rather, they are controlled by the terms of the mortgage document, itself. See Telfair, 216 F.3d at 1339.

Here, the Sponaugles filed their petition for bankruptcy on April 1, 1998, and the bankruptcy court confirmed the Plan on June 1, 1998. After confirmation, the Sponaugles made payments toward the arrearage according to the terms of the Plan, but failed to keep up regular payments on the mortgage. Five months after confirmation, on November 4, 1998, First Union filed a motion to lift the automatic stay so it could proceed to foreclose on the property. It is undisputed that in preparing and filing the motion, First Union incurred $915.00 in attorneys fees. Thus, it is clear that First Union incurred the $915.00 charge after confirmation of the Plan, and therefore  506(b) is inapplicable. Rather, the debt is governed by the terms of the mortgage document, itself. The Sponaugles' breach of contract claim alleges a breach of the terms and conditions of that mortgage.

The mortgage document between the Sponaugles and First Union states in part:

> Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy. . . ), then

> Lender may do and pay for whatever is necessary to protect
> the value of the Property and Lender's rights in the Property.
>
> . . . .
>
> Any amounts disbursed by Lender under this
> paragraph 7 shall become additional debt of Borrower
> secured by this Security Instrument.

Br. of Appellee at 5 (emphasis added).  The contract between the parties thus allowed First Union to collect the attorneys' fees that have been assessed.  Accordingly, First Union clearly did not breach that mortgage contract when it assessed those fees. The Sponaugles also argue that First Union violated the federal Fair Debt Collection Practices Act ("FDCPA").  Under the FDCPA, "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. 1692f (1999).  The conduct prohibited under the FDCPA includes:

> (1) The collection of any amount . . . unless such amount is
> expressly authorized by the agreement creating the debt or
> permitted by law.

15 U.S.C.  1692f(1).

The Sponaugles contend that First Union violated the FDCPA by assessing the $915.00 charge without first seeking approval of the bankruptcy court under 11 U.S.C. 506(b).  However, as discussed above, First Union was not obligated to first obtain court approval.  Moreover, as also noted earlier, the charge is authorized by the mortgage document itself.  Therefore, the district court properly found that First Union did not violate the FDCPA.

The Sponaugles also claim that First Union is liable under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  They maintain that First Union misrepresented in the Reinstatement Agreement that they only owed $50.00 in attorneys' fees and costs.  A plaintiff must prove the elements of common law fraud to prevail under the UTPCPL.  These elements are: 1) a material misrepresentation of an existing fact; 2) scienter; 3) justifiable reliance on the misrepresentation; and 4) damages. See Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa. Super. 2000); Hammer v. Nikol, 659 A.2d 617, 620 (Pa. Commw. Ct. 1995).

First Union filed a  91 Notice with the Pennsylvania Housing Finance Administration ("PHFA") so that the Sponaugles could obtain a PHFA loan to bring their mortgage payments current.  In the Reinstatement Agreement, First Union listed the amount in arrears, and included an additional $50.00 in attorneys' fees the maximum recoverable amount for attorneys' fees from the PHFA.  The PHFA paid the $50.00 to First Union, and First Union in return credited this amount to the Sponaugles' outstanding legal fees, leaving a $915.00 balance.

The Sponaugles contend that they were "misled" into believing that $50.00 was the extent of the attorneys' fees.  However, they provide no evidence of deceptive or misleading statements or actions either in the Reinstatement Agreement or elsewhere. The Sponaugles do not contest that $50.00 is the maximum amount in attorneys' fees from the PHFA.  They also do not contest that First Union was authorized under the mortgage agreement to incur attorneys' fees to protect its interest in the property. Therefore, the Sponaugles cannot show that First Union made any material misrepresentations, nor can they establish injury.  Accordingly, they cannot establish the fraud necessary to prevail under the UTPCPL.

For all the reasons set forth herein, we will affirm the district court's grant of summary judgment in favor of First Union.

TO THE COURT:

Please file the foregoing opinion.

By the court,
 /s/ Theodore A. McKee
Circuit Judge

Sponaugle v.  First Union Mortgage Corporation, No.  01-3325

WALLACE, Senior Circuit Judge, concurring:
     My colleagues hold there is no jurisdiction and yet rush to a discussion of
the merits.  I disagree with the majority that there was no jurisdiction and for that
reason write separately.
     The majority tells us that, beyond two letters and two telephone calls, "First
Union has not taken any further efforts to collect, and apparently no longer has
any right to undertake any such efforts."  Based on this, the majority holds that the
Sponaugles lack standing because any injury they may in the future suffer "is, at
best, hypothetical and conjectural."
     While there is no Third Circuit precedent addressing this issue, the relevant
statutory language and extra-circuit authority is instructive on standing under the
Fair Debt Collection Practices Act (Act).  Section 1692k(a) of Title 15 states that
"any debt collector who fails to comply with any provision of this subchapter with
respect to any person is liable to such person . . .."  15 U.S.C.   1692k(a).  Further,
Keele v. Wexler, 149 F.3d 589, 592-93 (7th Cir. 1998), held that a plaintiff who
had received letters purportedly in violation of the Act had standing as a class
representative, regardless of whether she had paid the amount allegedly owed,
because "the injuries she and the class members alleged were the receipt of the
debt collection letters, not the payment of the [allegedly unauthorized] collection
fee."  Id., at 593.  Similarly, Wright v. Finance Service of Norwalk, Inc., 22 F.3d
647 (6th Cir. 1994) (en banc), held that anyone who receives unauthorized
communications has standing to sue, stating that those authorized to sue under 15
U.S.C.   1692k(a) "include[] those persons . . . who 'stand in the shoes' of the
debtor or have the same authority as the debtor to open and read the letters of the
debtor."  Id., at 650.  The Ninth Circuit is in accord, holding in Baker v. G.C.
Services Corp., 677 F.2d 775, 777 (9th Cir. 1982), that a debtor has standing to

complain of Act violations even if he owes the entire amount of the debt.

This authority indicates that it is not whether the debt is owed, paid, or likely to be collected in the future that determines whether one has standing to sue under the Act, but rather whether the debtor alleges a violation of the Act, and that an individual covered by the Act has been the recipient or target of the violative conduct.  In the present case, the Sponaugles alleged conduct constituting a colorable violation of the Act, and this is sufficient to give them standing.  But I agree with the majority's holding on the merits that First Union was permitted to collect the fee and that its communications attempting to collect the fee were therefore not a violation of the Act