LYONS, Justice.
Michael Banker appeals pursuant to § 6-5-642, Ala.Code 1975, from the order of the Mobile Circuit Court denying his motion for nationwide class certification in an action pending in that court against Circuit City Stores, Inc. We affirm the order denying class certification.
I. Facts and Procedural History
On August 28, 2000, Banker purchased a Sony CPDE400 computer monitor from a Circuit City store in Mobile for $549.99. Packed with the monitor was a document evidencing a one-year manufacturer’s war *993 ranty from Sony. The same day Banker also purchased from Circuit City a three-year service plan for the monitor for $139.99; this service plan, known as the “Computer Support Plus” (“the CSP”), is provided by Circuit City on a variety of computer products.
Banker’s sales receipt from his purchases on August 28, 2000, stated that “this sales receipt and the accompanying terms and conditions constitute your SERVICE CONTRACT.” The “accompanying terms and conditions” are found in a brochure known as the service guide for the CSP, which Circuit City instructed its sales representatives to give to customers who purchase the CSP. The service guide states that the CSP “provide[s] for the repair or replacement (if non-repairable) of the Products(s) resulting from failures that occur during normal usage.” The service guide also states:
“Coverage on your Product(s) begins at 12:01 a.m. on the effective date specified by your sales receipt or, if your Product has a manufacturer’s warranty of more than one year, this Contract coverage will begin one year following your purchase date. However, damage to your Products(s) caused by power surge will be covered under this Contract from the Product purchase date. Coverage ends at 11:59 p.m. on the ending date specified by your sales receipt.”
Thus, the CSP that Banker purchased provided coverage for repairs for damage caused by power surges for four years beginning with the date of purchase, and it provided coverage for repairs resulting for normal usage of the product for three years after the expiration of the manufacturer’s warranty or 12 months of ownership, whichever is less.
Banker’s sales receipt from Circuit City dated August 28, 2000, states that “Computer Support Plus for the SONY CPDE400 starts 08/28/03 and expires 08/28/04.” However, the service guide for the CSP states: “If there is a conflict between the terms of this Contract and information communicated either orally or in writing by one or more of our employees or agents, this Contract shall control.” In a deposition Banker testified that he does not recall whether he received the service guide for the CSP or any document that explained the coverage of the CSP other than his sales receipt.
Banker experienced problems with the monitor during his first year of ownership, and he contacted Circuit City on or about January 24, 2001, to request a replacement monitor. Banker believed that the CSP was a three-year warranty on the monitor that began with the date of purchase and that the CSP required Circuit City to replace the monitor at any instance of a malfunction during his first three years of ownership. In a deposition Banker testified that he believed the CSP constituted a three-year warranty because “the salesperson told [him].” Banker stated that the salesperson for Circuit City stated that “instead of having a one-year warranty, [he could] get a three-year warranty for this price. [Banker] said okay”; he further stated that his understanding was that “instead of having a one-year warranty, [he] would have a three-year warranty.”
When Banker first requested a replacement monitor from Circuit City, Circuit City referred Banker to Sony because the monitor was then under the manufacturer’s warranty from Sony. Banker contacted Sony, and Sony representatives informed Banker that the monitor was covered by a three-year manufacturer’s warranty. Circuit City asserts that it believed that the monitor came with a one-year manufacturer’s warranty because Sony had placed a one-year war *994 ranty in the box containing the monitor. In a deposition a designated representative for Circuit City stated that “the fact that the product had a three-year warranty was the mistake, not the fact that it had a three year and we thought it had a one-year warranty.”
After Banker spoke with a Sony representative he again requested a replacement monitor from Circuit City. Circuit City asserts that, although, it says, it was not obligated to replace the monitor, it subsequently gave Banker a replacement monitor. Banker accepted the new monitor from Circuit City. Banker then requested that Circuit City refund the $139.99 he had paid for the CSP. Circuit City refused to refund the purchase price of the CSP because, it said, Banker had already received the full benefit of the CSP by receiving a new monitor from Circuit City.
Banker then sued Circuit City in the Mobile Circuit Court on March 30, 2001, alleging fraud and fraudulent suppression. However, Banker amended his complaint six times and ultimately dismissed the claims of fraud and fraudulent suppression and asserted claims against Circuit City alleging breach of contract, unjust enrichment, and violation of the Magnuson-Moss Warranty — Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq. (“the MMWA”). Banker contends that the CSP violates the disclosure requirements of the MMWA because, he says, important terms and conditions of the CSP are not fully, clearly, and conspicuously disclosed in simple and readily understood language. Banker also contends that Circuit City violated the MMWA because, he says, “[n]either the Circuit City sales receipt nor its CSP brochure sufficiently disclosed the fact that the Circuit City extended warranty would primarily run concurrently and be duplicative of the manufacturer’s warranty.” Banker also claimed that Circuit City’s failure to disclose the term, duration, and scope of the CSP constituted a breach of contract. Lastly, Banker claimed that Circuit City was unjustly enriched by the amount he paid for the CSP because, he said, the “payments were for the provision of three years extended service contract coverage and Circuit City provided less than three years of extended warranty coverage.”
Banker moved for the trial court to certify him as the representative for a nationwide class of individuals who had purchased the CSP from Circuit City in connection with the purchase of any computer product. Banker defined the proposed class as follows:
“All persons who from January 1, 2000 to the date this action is certified purchased a consumer product and Circuit City’s service plan, [Computer] Support Plus (hereinafter ‘CSP’) where either:
“• The dates of coverage of the CSP either create an overlap in coverage with the manufacturer’s warranty, OR
“• The dates of coverage of the CSP create gaps in coverage between the warranty and the service plan, OR
“• The dates and scope of coverage of the CSP are not fully, clearly, and conspicuously disclosed to the consumer and its terms and conditions are not presented in simple and readily understood language.”
On November 16, 2007, the trial court entered an order denying Banker’s motion for class certification and stating the following reasons for its denial: Banker had failed to show that his claims are typical of his proposed class; Banker was not an adequate class representative and his proposed class is not ascertainable; and Banker had not met his burden under Rule 23(b)(3), Ala. R. Civ. P., of showing *995 that common questions of fact predominate over the individualized questions that must be addressed for each class member.
II. Standard of Review
It is a well-settled principle that “ ‘[t]his Court applies an abuse-of-discretion standard of review to a trial court’s class-certification order, but we will review de novo the question whether the trial court applied the correct legal standard in reaching its decision to certify a class.’ ” Alfa Life Ins. Corp. v. Hughes, 861 So.2d 1088, 1094 (Ala.2008) (quoting Smart Prof l Photocopy Corp. v. Childers-Sims, 850 So.2d 1245,1248 (Ala.2002)). In Atlanta Casualty Co. v. Russell, 798 So.2d 664, 666 (Ala. 2001), this Court further stated:
“The trial court is endowed with a substantial amount of discretion in determining whether to certify a class, and [an appellate court] will not disturb its determinations without a showing of abuse. Ex parte Holland, 692 So.2d 811, 814 (Ala.1997). In determining whether certification [or the refusal to certify] was proper, we consider whether the party seeking certification produced substantial evidence satisfying the requirements of Rule 23(a), Ala. R. Civ. P.”
III. Analysis
In order to maintain an action as a class action, a plaintiff must establish the prerequisites of Rule 23(a), Ala. R. Civ. P., as well as one of the requirements set forth in Rule 23(b). Alfa Life Ins. Corp. v. Hughes, 861 So.2d 1088, 1094 (Ala.2003). Rule 23(a), “Prerequisites to a Class Action,” provides:
“One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.”
Banker asserts that he has met the prerequisites of Rule 23(a) and that class certification in this cause is proper under Rule 23(b)(2) or Rule 23(b)(3). Rule 23(b) provides:
“(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
[[Image here]]
“(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
“(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.”
Section 6-5-641(e), Ala.Code 1975, provides, in pertinent part: “When deciding whether a requested class is to be certified, the court shall determine, by employ *996 ing a rigorous analysis, if the party or parties requesting class certification have proved its or their entitlement to class certification under Ala. R. Civ. P. 23.”
Banker contends that he has satisfied all the requirements of Rule 23 for entitlement to class certification of his claims. Because this issue is dispositive of this appeal, we will first address whether Banker demonstrated that his claims of a violation of the MMWA, breach of contract, and unjust enrichment are typical of the claims of the putative class. See Rule 23(a)(3), Ala. R. Civ. P. This Court has held that “ ‘ “[t]he essence of the typicality requirement is that the relationship between the injury to the class representatives and the conduct affecting the entire class of plaintiffs must be sufficient for the court to properly attribute a collective nature to the challenged conduct.” ’ ” Avis Rent A Car Sys., Inc., v. Heilman, 876 So.2d 1111, 1117 (Ala.2003) (quoting Atlanta Cas. Co. v. Russell, 798 So.2d at 668, quoting in turn Warehouse Home Furnishing Distnbs., Inc. v. Whitson, 709 So.2d 1144, 1149 (Ala.1997)).
The trial court found that Banker’s claims were not typical of the putative class because, it reasoned, Banker was not injured by his purchase of the CSP in that Circuit City provided him with a new monitor. The order of the trial court states:
“[Banker] asserts that he was injured, but in reality mistakenly believed— based solely upon alleged oral representations — that the manufacturer’s warranty had been superseded by the CSP and that Circuit City would replace the product if it malfunctioned for three years following its purchase. Put simply, [Banker] entered into a bargain, misunderstood the terms, received exactly what he believed the benefit of his bargain to be, and then demanded and now demands a refund of consideration. The Court has difficulty perceiving what constitutes [Banker’s] ‘injury,’ and counsel’s argument at the hearing that the ‘violation ... occurred when he bought a warranty that was unclear’ does not answer how Mr. Banker was injured, if at all, and how that injury is similar to any injury suffered by the class. (Transcript at 50). Logic dictates that it is not. [Banker] has not suggested how [he] was deprived of any benefit of his perceived bargain, or how he was deprived of anything under the terms of the CSP. By the CSP’s terms, the most [Banker] would be entitled to was a ‘new or factory reconditioned Product.’ (CSP at ¶ 6) [Banker] received a new monitor about which he has no complaints.”
Banker asserts that his damages are not related to whether Circuit City satisfied the terms of the CSP; rather, he asserts, his damages are the cost of the CSP. Banker asserts that he and all other members of the putative class have been harmed by Circuit City’s alleged failure to provide “proper disclosures ... concerning the CSP service contract so that he could make an informed decision, at the point of sale, as to whether or not to purchase the CSP.” Banker’s brief at p. 39. Banker contends that the only differences among the members of the putative class would be the various products purchased and the amount each member paid for his or her CSP. Banker contends that his claims are typical of all the members of the putative class because Circuit City uses a form document for the CSP; therefore, he says, documents substantially similar to the documents he received form the basis of the claims of all members of the putative class.
Banker further contends that this case is analogous to Keele v. Wexler, 149 F.3d 589, 592 (7th Cir.1998), in which the United States Court of Appeals for the Seventh Circuit affirmed a class-certification order. *997 In Keele, Karen Keele had written a personal check to a Wal-Mart discount store for $85.26; the check was later dishonored by Keele’s bank. 149 F.3d at 590. Wal-Mart retained a law firm that subsequently sent Keele a debt-collection letter stating that Keele must pay the law firm the amount of the dishonored check, a $20.00 service charge, and a $12.50 collection fee. 149 F.3d at 590. Keele subsequently paid the law firm the amount of the dishonored check and the service charge, but not the collection fee. 149 F.3d at 591. Keele sought class certification for claims against the law firm of violations of the Fair Debt Collection Practices Act (“the FDCPA”) and the Colorado Fair Debt Collection Practices Act (“the CFDCPA”). 149 F.3d at 592. Relevant to Banker’s argument, Keele claimed that the CFDCPA prohibited the law firm from seeking a collection fee from Wal-Mart debtors in Colorado, and the trial court certified a class as to this claim. 149 F.3d at 592.
On appeal, the law firm argued that Keele’s claim that the law firm could not seek a collection fee from Wal-Mart debtors was not typical of the class because she never paid the collection fee. 149 F.3d at 592. The Court of Appeals for the Seventh Circuit held that Keele’s claim was typical of the claims of the class. 149 F.3d at 595. That court held:
“By mailing the form letters seeking the $12.50 collection fee, the [law firm] engaged in the same course of conduct towards Keele and the members of classes A and B. These individuals are now suing the [law firm] under the FDCPA and CFDCPA, alleging violations of the same statutory sections under the same legal theory.”
149 F.3d at 595. Banker contends that just as Keele’s nonpayment of the collection fee was immaterial to her class-action claim that the law firm illegally sought to recover collection fees from Wal-Mart debtors, his receipt of a new monitor from Circuit City is immaterial to whether Circuit City violated the disclosure requirements of the MMWA.
Circuit City contends that the trial court properly found that Banker failed to meet his burden of proving that his claims are typical of those of the putative class. See Rule 23(a)(3), Ala. R. Civ. P. Circuit City contends that Banker failed to show how he was injured because, it says, Banker received the full benefit of the CSP and proof of injury and damage are necessary to allegations of violations of the MMWA, unjust enrichment, and breach of contract. Circuit City first notes that the United State Supreme Court has interpreted subsection (3) of Rule 23(a), Fed.R.Civ.P., to require a class representative to “ ‘ “possess the same interest and suffer the same injury” as the class members.’ ” General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting East Texas Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), quoting in turn Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)).[1] Circuit City contends that because Banker received the full benefit of what he thought he had purchased, he has not suffered the same alleged injury as other putative class members and therefore that his claims cannot be typical of the claims of the putative class. Circuit City further notes that in Rodriguez, 431 U.S. at 403-04, 97 S.Ct. *998 1891, the United States Supreme dealt with whether named plaintiffs were representative of a class and held that the named plaintiffs “lacked the qualifications to be hired as line drivers. Thus, they could have suffered no injury as a result of the alleged discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury.” (Footnote omitted.)
Circuit City also contends that Banker’s reliance on Keele is misplaced because, it says, unlike the FDCPA, the MMWA does not provide for statutory damages. Rather, the MMWA provides for only compensatory and equitable relief, for which individualized proof of damage is required. Circuit City notes that in Keele the Seventh Circuit stated that the “FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages.” 149 F.3d at 593 (footnote omitted). Although Keele’s claim regarding the collection fee was made pursuant to the CFDCPA, the Seventh Circuit also noted that its “legal discussion of the FDCPA is equally applicable to the CFDCPA” because the CFDCPA is patterned after the FDCPA. 149 F.3d at 594 n. 6.
We agree that Keele is distinguishable from the present case because the MMWA requires proof of injury to recover under its provisions. See 15 U.S.C. § 2310(d). Subsection (d) of the MMWA, titled “Civil action by consumer for damages, etc.; jurisdiction; recovery of costs and expenses; cognizable claims,” provides that “a consumer who is daw,aged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring sint for damages and other legal and equitable relief .... ” 15 U.S.C. § 2310(d)(1) (emphasis added). Thus, the MMWA does not provide that a consumer may recover statutory damages.
Banker has not been damaged by Circuit City’s alleged violation of the disclosure requirements of the MMWA or by Circuit City’s alleged breach of contract, nor has Circuit City been unjustly enriched; Banker accepted a new monitor from Circuit City without any reservations or conditions. Banker asserts that his damages and the damages of every member of the putative class is the cost of the CSP. Yet Banker has received more than three times his cost of the CSP — $139.99— by accepting a new monitor from Circuit City, which was worth $549.99. We note that Banker also alleges that because of Circuit City’s alleged failure to provide proper disclosures about the terms and conditions of the CSP he was unable to make an informed decision about purchasing the CSP. However, had Banker been given the information he claims he lacked, the most he could have saved was $139.99, the amount of the CSP, which he presumably would have declined to purchase. And, once again, Banker is faced with the undisputed fact that he unconditionally accepted a benefit from Circuit City substantially in excess of the amount he claims he could have saved by not purchasing the CSP. Likewise, because Circuit City has conferred upon Banker a benefit in excess of his claimed out-of-pocket loss, which Banker accepted unconditionally before he commenced his action, his status is not typical of other putative class members who might have claims against Circuit City for disgorgement of sums as to which Circuit City has allegedly been unjustly enriched. We are not here dealing with the effect of a presuit tender of compensatory damages in the context of a fraud claim because Banker dismissed the fraud count of his complaint. Likewise we are not dealing with the payment of compensatory *999 damages by a third party because it is undisputed that the replacement monitor was furnished by Circuit City, not Sony.
We conclude that the trial court did not exceed its discretion in finding that Banker failed to sustain his burden of showing that his claims are typical of the claims of the putative class. Banker’s claims of violations of the MMWA, breach of contract, and unjust enrichment are not typical of the putative class because Banker has not suffered any damage from the alleged wrongful conduct out of which the claims of the putative class arise.
IV. Conclusion
Because we find that Banker’s claims are not typical of the claims of the putative class, we pretermit consideration of all other arguments by Banker and Circuit City. We affirm the order denying class certification.
AFFIRMED.
COBB, C.J., and STUART, BOLIN, and MURDOCK, JJ., concur.

. “Federal cases construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure, which were patterned after tire Federal Rules of Civil Procedure.’’ Ex parte Novartis Pharms. Corp., 975 So.2d 297, 300 n. 2 (Ala. 2007).